ELIZABETH EPLING *et al.*

*v.*

GEORGE W. HUTTON *et al.*

*Filed at Springfield September 27, 1887.*

1. ERROR WILL NOT ALWAYS REVERSE—*of instructions relating to matters not in issue.* When the contestants of a will, by bill in chancery, on the trial abandon all the issues except as to the mental capacity of the testator, and limit all their instructions to that issue, they will not be heard to complain of errors affecting only the issues abandoned on the trial.

2. So in such case, there being no evidence as to other grounds than that relating to the testamentary capacity of the testator, errors in instructions relating to the question of undue influence can work no injury, and will afford no ground for the reversal of the decree dismissing the bill.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Messrs. PATTON & HAMILTON, Messrs. PALMERS & SHUTT, and Mr. T. J. NUCKOLLS, for the appellants.

Mr. GEORGE W. MURRAY, and Messrs. McCARTNEY & CASEY, for the appellees.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a bill filed by appellants, claiming to be the heirs-at-law of Seth Mason, deceased, against appellees, devisees and legatees under the will of said decedent, to set said will aside. The grounds relied upon for the relief prayed in the bill were, first, that said Mason, at the time of making said pretended will, was not of sound and disposing mind; second, that appellee Hutton dictated the will, and said Mason did not in fact execute the same; and third, that the instrument purporting to be the will of said Seth Mason was not signed by him, or by any one in his presence, or by his direction, or attested by two or more witnesses. An answer was filed, and an issue, "whether the writing produced be the will of the testator, Seth Mason, or not," was submitted to a jury. Verdict, upon the issue, finding that it was the last will and testament of said Seth Mason, deceased, and decree entered dismissing the bill accordingly, and for costs.

On the trial, the court, with the assent of all the parties, stated to the jury the issue to be tried, thus:

"The issue is, is the instrument produced, the will of Seth Mason? This is the analysis:

"*First*—The proponent must establish, first, that the will is in writing; second, that it was signed by the testator, or in his presence, by some one under his direction; third, that it was attested according to the requirements of the statute; fourth, that the testator was of sound mind and memory at the time of signing and acknowledging the will.

"*Second*—Contestants may deny any one or all of the above facts, and they may show, first, fraud; second, compulsion; third, any improper conduct or influence sufficient to invalidate the will."

The complainants bring the case to this court, and assign for error the ruling of the court in giving instructions, only.

We do not propose encumbering the reports with an examination of the nineteen instructions given, out of the twenty-seven asked by appellees. Many of these are open to the criticism of being mere abstract propositions of law, while others are inaccurate in applying the law to the facts of the case; but without pausing to discuss them in detail, it may be said, that whatever the result might have been upon a different state of facts, or where the correctness of the decree rendered by the court could be seriously questioned under the evidence, there is no such error in the instructions given as will authorize a reversal upon the facts shown in this record.

Three instructions were asked by appellant, and given. They gave correctly every material principle applicable to the real, and, indeed, only, issue tried,—that is, as to the mental capacity of the testator. When the two series of instructions relating to this issue, in which there is no real conflict, are considered together, it can be said the law was given with substantial accuracy. It is true that upon the issue made by the pleadings, of undue influence, appellants asked no instructions, and those given for appellees went to the jury as a correct exposition of the law; but, if erroneous, they could have worked no injury, as there was no sufficient evidence upon or from which the jury could have found for appellants upon that issue. The most that can be said is, that the evidence shows that Hutton, if he had been so disposed, might have influenced the mind of the testator; that he did so, or attempted to do so, is not shown by proof of facts and circumstances, or by evidence sufficient to raise even a suspicion. This was so apparent, in the court below, to counsel for appellant, that while we are

here treated to many pages of argument devoted to errors affecting that branch of the case alone, by their third instruction the jury were told "that the question in this case is, was the mind and memory of Seth Mason, at the time he signed the paper offered as his will, sufficiently sound to enable him to know and understand the business in which he was engaged," and the jury are then told what considerations should govern in determining the issue,—*i. e.*, the soundness or unsoundness of the testator's mind and memory. No other instruction asked by appellants related to any other issue. The effect of this instruction was, for the court, at the instance of contestants, to withdraw from the jury every other matter not relating to the question of the capacity of the testator to devise his estate. Appellants can not now be heard to complain of errors affecting only issues which they abandoned on the trial.

Fourteen witnesses only were examined in respect of the issue tried, all called by appellees, each of whom, with more or less directness, gave it as his opinion that the testator, at and about the time of making said will, was of sound mind and memory. No witness gives any other opinion, except that during short intervals, resulting either from exhaustion during or immediately following paroxysms of pain, or from the effects of anodynes administered for the relief of suffering, he was, in the opinion of a few of the witnesses, incompetent to transact business.

The disease with which the testator was afflicted, is said by the attending physicians to have been calcification of the arteries of the foot and leg, resulting, as shown, in atrophy and death of the foot and lower leg, to, perhaps, the middle of the upper third, and, later, in trismus and death. The physician was first called about the first of February, and continued in attendance until the death of Mason, May 19, following. The pain from the afflicted part was paroxysmal, the recurrence being more frequent and severe in the earlier and later stages of the disease, and less frequent and milder during the middle

portion of his illness. The treatment adopted appears to have been largely palliative from the beginning, — morphia and atropia combined being given and relied upon to control the pain, and, in addition, quinine was occasionally administered, as the symptoms indicated its necessity. This treatment was continued during the entire illness. The quantity of the sedative necessarily given to control the pain, would at times produce stupor, incapacitating the patient from performing intelligently any important act; but this would pass away in an hour or two, leaving him in his normal condition, except, perhaps, there was a gradual and general weakening of the vital forces. The testimony shows that in the morning and fore part of the day he was usually free from pain, and the effect of the drug administered in the evening and night having passed away, he was in better condition than at any other time during the twenty-four hours. The three or four witnesses who were present at the execution of the will concur that it was executed in the morning, that he was of sound mind and memory, and each states the reason for his so believing.

The will was executed on the morning of the 10th of April, 1885. At least two of these witnesses were notified to be present as attesting witnesses. Shortly after their arrival, Hutton came with a will prepared, and went into the room where Mason was lying. The witnesses could hear Hutton's voice in that room, as if reading. Presently he came to the door, and said the will, as he had written it, was not satisfactory to his uncle, Mason, and asked them to remain until he could write another, as it was desirable to have no erasures. They consented to do so, and in about an hour were called into Mason's room, and the will was signed by him, in their presence. He was raised up, the pen put in his hand, and, with some direction, signed his name. While attempting its execution he had some difficulty in seeing, and directed those present to get another pair of spectacles, giving particular directions where they could be found. He acknowledged the

instrument then signed to be his will, and the witnesses, at his request, and in his presence and the presence of each other, attested it.   Hutton was the nephew of the testator, had been his confidential adviser and manager when he was in health, and it can excite no remark that he should trust him, in whom he had always reposed confidence, in this extremity.   The evidence satisfies our judgment that the testator was mentally capable of making a testamentary disposition of his estate, and that the case, on its merits, has been justly determined.

The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*